UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV20-01842 JAK | | Date | September 6, 2024 |
|---|---|---|---|---|
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO WITHDRAW REFERENCE (DKT. 1)

## I.  Introduction

This action concerns a bankruptcy proceeding originally filed by B.P. Fisher Law Group, LLP on January 15, 2019. On June 11, 2020, Peleus Insurance Company ("Plaintiff" or "Peleus") filed an Adversary Complaint for Declaratory Relief (the "Adversary Complaint" or "Adversary Action") against Defendants B.P. Fisher Law Group, LLP ("BP Fisher"), Select Portfolio Servicing, Inc. ("SPS" or "Defendant") and others in the United States Bankruptcy Court for the Central District of California. Adv. Dkt. 1.[1] On July 31, 2020, Defendant SPS filed an answer to the Adversary Complaint (the "Answer") as well as a counterclaim for declaratory relief (the "Counterclaim"). Adv. Dkt. 24.

On September 24, 2020, Plaintiff filed a Motion to Withdraw Reference (the "Motion"). Dkt. 1. On February 1, 2021, Defendant filed an opposition (the "Opposition"). Dkt. 12. On February 22, 2021, Plaintiff filed a reply (the "Reply"). Dkt. 15. On March 23, 2021, and in accordance with L.R. 7-15, it was determined that the Motion could be decided without oral argument. Dkt. 16. On September 21, 2021, Defendant SPS filed a Request for Consideration of Newly Issued Authority Regarding Peleus's Motion to Withdraw Reference (the "Request"). Dkt. 17.[2]

For the reasons stated in this Order, the Motion to Withdraw Reference is **DENIED**.

## II.  Factual and Procedural Background

### A.  Parties

It is alleged that Plaintiff is a Virginia corporation whose principal place of business is in Texas. Adv. Dkt. 1 ¶ 4. It is alleged that Defendant SPS is a Utah corporation whose principal place of business is there. *Id.* ¶ 11. It is alleged that Defendant BP Fisher, the debtor in the matter, is a California Limited

---

[1] The Adversary Docket ("Adv. Dkt") refers to docket entries that are part of the Adversary Action, *In re B.P. Fisher Law Grp.*, No. 8:20-AP-01100-TA (Bankr. C.D. Cal.).
[2] The "newly issued authority" is *Corcoran v. Peleus Ins. Co.*, No. CV TDC-20-1115, 2021 WL 3472664 (D. Md. Aug. 6, 2021), which has been considered in connection with this Order. Accordingly, the Request is **MOOT**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
|---|---|---|---|
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

Liability Partnership whose sole member is a natural person who resides in California. *Id.* ¶ 5. Therefore, it is alleged that BP Fisher is a citizen of California. *Id.*

    B.    Relevant Allegations in the Adversary Complaint

It is alleged that the adversary proceeding is a "non-core" one under 28 U.S.C. § 157. *Id.* ¶ 1. It is also alleged that this Court has jurisdiction over the proceeding under 28 U.S.C. § 1334(b), because the dispute relates to a case arising from Title 11. *Id.* ¶ 3. It is also alleged that there is diversity jurisdiction because it is an action between citizens of different states with an amount in controversy that exceeds $75,000. *Id.*

It is alleged that Plaintiff issued a Claims Made and Reported Lawyers Professional Liability policy (the "Policy") to BP Fisher in California, that it was in effect from May 16, 2018 to December 8, 2018, and was then cancelled pursuant to California Insurance Code Section 673. *Id.* ¶ 15. It is alleged that California law governs the interpretation and enforceability of the Policy. *Id.*

It is alleged that, on December 31, 2018, SPS filed an action against BP Fisher in the United States District Court for the District of Maryland, alleging, *inter alia*, mismanagement of BP Fisher's client trust funds. *Id.* ¶ 22. It is further alleged that in December 2018 and January 2019, SPS filed two additional claims in the District of Maryland against certain individual members and subsidiaries of BP Fisher. *Id.* ¶¶ 22–23.

    C.    Relevant Remedies Sought in the Adversary Complaint

Plaintiff seeks a declaration that it has no duty to defend or indemnify any of the defendants in the SPS January 2019 action. *Id.* ¶¶ 35–39. Plaintiff also seeks a declaration that it has no duty to defend or indemnify any defendants in connection with the SPS December 2019 actions. *Id.* ¶¶ 40–44. Plaintiff demands a jury trial for all claims for which it has such a right. *Id.* at 11.

    D.    Summary of the Adversary Complaint and Relevant Related Actions

On January 15, 2019, BP Fisher filed for bankruptcy in the United States Bankruptcy Court for the Central District of California. *In re BP Fisher Law Grp., LLP*, No. 8:19-BK-10158-TA, (Bankr. C.D. Cal. Jan. 15, 2019), Bankr. Dkt. 1.

On January 31, 2020, two BP Fisher employees brought a breach of insurance contract action against Plaintiff in the Circuit Court for Montgomery County, Maryland, which was removed to the United States District Court for the District of Maryland on April 30, 2020. *See Corcoran v. Peleus Ins. Co.*, No. CV TDC-20-1115, 2021 WL 3472664, at *1–2 (D. Md. Aug. 6, 2021).[3] In the breach of contract action, the employees allege that Plaintiff denied them insurance coverage against an action brought against them by Defendant SPS. *Id.*

On June 11, 2020, Plaintiff filed its Adversary Complaint against several defendants, including SPS, in

---

[3] Peleus, among other defendants in the breach of contract action, moved to dismiss the action pending in the District Court in Maryland or, in the alternative, to transfer it to the United States District Court for the Central District of California. *Corcoran*, 2021 WL 3472664, at *6. On August 6, 2021, the motions were denied. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
|---|---|---|---|
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

the United States Bankruptcy Court for the Central District of California, seeking declaratory relief with respect to indemnity for covering or defending any party to the SPS action. *See* Adv. Dkt. 1; Adv. Dkt. 1 ¶¶ 35–44. Defendant SPS filed its Answer and Counterclaim on July 31, 2020, and Plaintiff answered the counterclaim on August 21, 2020. Adv. Dkts. 24, 31.

On August 31, 2020, Defendant Andrew R. Corcoran filed a Motion to Dismiss the Adversary Complaint, or, in the Alternative, to Stay or Transfer and consolidate the Adversary Complaint with the matter before the District of Maryland. Adv. Dkt. 38. On September 1, 2020, the Bankruptcy Court set a hearing date for Corcoran's motion to dismiss or transfer. Adv. Dkt. 40. On September 9, 2020, Defendant Matthew C. Browndorf filed a similar motion to dismiss or transfer the Adversary Complaint. Adv. Dkt. 43. On September 10, 2020, the Bankruptcy Court set a hearing for Browndorf's motion to dismiss or transfer. Adv. Dkt. 44.

On September 24, 2020, Plaintiff filed its Motion to Withdraw Reference. Dkt. 1. On February 1, 2021, Defendant filed an opposition (the "Opposition"). Dkt. 12. On February 22, 2021, Plaintiff filed a reply (the "Reply"). Dkt. 15.

On December 21, 2020, the Adversary Action was temporarily stayed pending a decision by the District Court in Maryland on Peleus's Motion to Dismiss or Transfer in the breach of contract action (*Corcoran v. Peleus Ins. Co.*, No. CV TDC-20-1115), and a decision on this Motion (Adv. Dkt. 63 at 2).

On April 15, 2021, in a Joint Status Report, SPS requested that the Adversary Proceeding be transferred to the District of Maryland. Adv. Dkt. 67 at 7.

As noted, on August 6, 2021, the District of Maryland denied the motions to dismiss the breach of contract action, or in the alternative, transfer it to the United States District Court for the Central District of California. *Corcoran*, 2021 WL 3472664, at *6.

Since the issuance of the order staying the Adversary Action, the Bankruptcy Court has postponed status conferences on case management and hearings on the motions to dismiss or transfer, until a ruling on the present Motion is issued. *See* Adv. Dkt. 160 (continuing hearings to November 14, 2024).

**III.    Analysis**

       A.    Legal Standards

Pursuant to 28 U.S.C. § 157(a), a district court may refer bankruptcy cases to "bankruptcy judges for the district." Under § 157(b), bankruptcy judges are assigned to "hear and determine . . . all core proceedings arising under title 11." 28 U.S.C. § 157(b)(1).

"Core proceedings" are those in which the bankruptcy court "may enter appropriate orders and judgments." *Id.* "Non-core proceedings" are those in which the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court" so that "any final order or judgment shall be entered by the district judge." 28 U.S.C. § 157(c)(1). Non-core proceedings "do not depend on bankruptcy laws for their existence and [] could proceed in another court." *Sec. Farms v. Int'l Bhd. of*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
|---|---|---|---|
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

*Teamsters, Chauffers, Warehouseman & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). In a non-core proceeding, a bankruptcy court may not issue "orders and judgments" without "the consent of all parties to the proceeding." 28 U.S.C. § 157(c)(2).

Section 157(d) governs the district court's authority to withdraw the reference to a bankruptcy court:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on a timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

Withdrawal of the reference is mandated "in cases requiring material consideration of non-bankruptcy federal law." *Sec. Farms*, 124 F.3d at 1008. Where it is not mandated, the district court is permitted to withdraw "on its [own] motion or on timely motion of a party, *for cause shown.*" *Id.* (emphasis in original) (internal citations and quotations omitted). To determine whether there is such cause, "a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Id.* (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)).

A party that moves to withdraw the reference bears the burden of persuasion. *In re First All. Mortg. Co.*, 282 B.R. 894, 902 (C.D. Cal. 2001).

    B.    Application

        1.    <u>Timeliness</u>

Defendant argues that, because the Motion was filed more than three months after Plaintiff filed the Adversary Complaint, it is untimely and the permissive withdrawal "for cause" factors need not be reached. Dkt. 12 at 15–16. Timeliness is often considered a threshold matter. *See, e.g.*, *In re Mahlmann*, 149 B.R. 866, 869 (N.D. Ill. 1993) ("The threshold question in evaluating a motion to withdraw the reference under § 157(d) is whether plaintiffs' motion . . . was made in a timely manner."); *In re GTS 900 F, LLC*, No. 2:09-BK-35127-VZ, 2010 WL 4878839, at *2 (C.D. Cal. Nov. 23, 2010) ("A court may consider a motion for withdrawal of the reference only if it is timely."); *In re Don's Making Money, LLLP*, No. CV 07-319-PHX-MHM, 2007 WL 1302748, at *2 (D. Ariz. May 1, 2007) ("Any motion to withdraw must be timely.").

28 U.S.C. § 157(d) does not set an absolute deadline for determining timeliness. Instead, a motion to withdraw the reference is deemed timely when it is "made as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms*, 124 F.3d at 1007 n.3 (quoting *In re Baldwin–United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985)). In assessing timeliness, "the key issue is when the moving party was first aware nonbankruptcy federal laws must be dealt with in resolving the case." *In re Mahlmann*, 149 B.R. at 869. "When the complaint contains the allegations of other law which are the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

grounds for the motion to withdraw reference . . . the filing of the complaint is the point from which timeliness of the motion should be assessed." *Laine v. Gross*, 128 B.R. 588, 589 (D. Me. 1991) (internal citations and quotations omitted).

Defendant argues that the Motion is untimely because Plaintiff "knew its grounds for withdrawal of the reference when it" filed the Adversary Complaint, and should have moved for withdrawal either "at the time of filing or [] based upon the discovery of previously unknown reasons supporting the withdrawal." Dkt. 12 at 15–16.

In response, Plaintiff cites *In re Addison*, 240 B.R. 47, 49 n.1 (C.D. Cal. 1999), in which a defendant's motion to withdraw the reference was deemed timely although filed within two months of the initial complaint "and before any developments [had] occurred in the adversary proceeding." Dkt. 1 at 15. Plaintiff contends that there were no substantive developments in the Adversary Action, and that "those cases [in which] motions were denied as untimely after only a few months involved very clear indications of tactical delays and forum shopping after the bankruptcy judge made interlocutory findings adverse to the moving party." Dkt. 15 at 7.

Plaintiff's argument is unpersuasive. For more than three months, Plaintiff was "obviously aware of the[] . . . state law claims that are the basis for this Motion." *Horowitz v. Sulla*, CV. No. 16-00433 DKW-KSC, 2016 WL 5799011, at *3 (D. Haw. Sept. 30, 2016) (collecting cases) (finding no timely motion where plaintiff filed the complaint and was the one that moved for withdrawal five months later because plaintiff was aware of the basis of the motion from the day it filed the complaint). Indeed, Plaintiff filed the Adversary Complaint on June 11, 2020, alleging that the action was a "non-core proceeding" (Adv. Dkt. 1 ¶ 1), the District Court had diversity jurisdiction (*Id.* ¶ 3), and that the California Insurance Code "governs the interpretation and enforceability" of the policy for which it sought declaratory relief (*Id.* ¶¶ 15, 35–39). Plaintiff also refused to consent to entry of final orders or judgment by the Bankruptcy Court. *Id.* ¶ 1.

Further, Plaintiff has cited a case in which it was determined that a defendant's motion to withdraw was timely because the motion was filed within two months of the complaint and before any developments occurred in the adverse bankruptcy proceeding. Dkt. 1 at 15; *see In re Addison*, 240 B.R. at 49 n.1. That decision is distinguishable. Here, Plaintiff waited more than three months to move for withdrawal on the grounds it alleged in the Adversary Complaint. *See In re Mahlmann*, 149 B.R. at 869 (denying motion to withdraw reference filed one month after plaintiff initiated adversary proceeding because "it was the plaintiffs' own pleadings which raised the federal issues which the plaintiffs claim merit withdrawal of reference"); *see also In re Secs. Grp. 1980*, 89 B.R. 192, 195 (M.D. Fla. 1988) (denying motion to withdraw reference because it was not filed contemporaneously with movants' pleadings, from which movants could "intelligently determine that the proceeding could be withdrawn").

For these reasons, the Motion is untimely.

    2.    <u>Permissive Withdrawal Factors</u>

Even if Plaintiff had timely filed its Motion, it has not carried its burden to show that permissive withdrawal should be granted based on a balancing of the "for cause" factors stated in *Orion*. *See In re Orion*, 4 F.3d at 1101.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
|---|---|---|---|
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

        a)       Core / Non-Core

"A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *Id*. In certain cases, when a claim is non-core, withdrawing the reference may favor judicial efficiency because "inasmuch as a bankruptcy court's determinations on non-core matters are subject to *de novo* review by the district court, unnecessary costs could be avoided by a single proceeding in the district court." *Sec. Farms*, 124 F.3d at 1008–09. However, "[w]hether the claim is core or non-core is not dispositive of the motion to withdraw, but is merely a factor to consider." *In re Daewoo Motor America, Inc.*, 302 B.R. 308, 310 (C.D. Cal 2003); *see also Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 223 (D. Haw. 2006) ("The determination of whether claims are core or non-core is not dispositive of a motion to withdraw a reference.").

Plaintiff argues that its claims "for declaratory relief under California contract and insurance law," and "SPS's counterclaim . . . for declaratory relief and [] damages," are non-core because they "do not implicate any aspect of federal bankruptcy law." Dkt. 1 at 12.[4] Defendant does not challenge whether the claims are currently non-core. *See* Dkt. 12. Instead, Defendant contends that "[i]f the Estate *were* to file counterclaims, the action could be a core proceeding." *Id.* at 11 (emphasis added).[5]

Neither Plaintiff's claims nor Defendant's counterclaims depend on federal bankruptcy law. Should the Estate choose to file a counterclaim, the Adversary Action may become a core proceeding. *In re GTS 900 F, LLC*, No. 2:09-BK-35127-VZ, 2010 WL 4878839, at *4 (C.D. Cal Nov. 23, 2010) ("Adjudication of counterclaims by the estate against persons filing claims against the estate is characterized as a core proceeding." (citation omitted)). However, the Adversary Action is presently non-core. Therefore, this non-dispositive factor weighs in favor of withdrawing the reference.

        b)       Efficient Use of Judicial Resources

Judicial resources are efficiently used when the claims at issue are decided by the court most "familiar with the factual background and substantive law related to" those claims. *In re Ruby's Diner, Inc.*, No. 8:18-BK-13311-SC, 2021 WL 4572001, at *3 (C.D. Cal. June 2, 2021); *see also In re Heller Ehrman LLP*, 464 B.R. 348, 359 (N.D. Cal. 2011) (collecting cases) (efficiency is served by retaining an action with the "judge [that] has a high level of familiarity with the action as a whole . . . [and] familiarity with the legal issues").

Plaintiff argues that "the legal malpractice and insurance coverage claims here . . . are purely state law claims that do not require the knowledge and experience of a bankruptcy judge," and thus, withdrawing the reference would be more efficient. Dkt. 1 at 13–14. Plaintiff further argues against waiting to withdraw the reference until the case is ready for trial, because doing so would have "simply no benefit

---

[4] Plaintiff also argues that "permissive withdrawal is appropriate where 'non-core issues predominate.'" Dkt. 1 at 11. However, in many of the cases Plaintiff cites in support of this position, permissive withdrawal was denied for non-core claims.

[5] Defendant also argues, without citing any legal authority, that "the core or non-core determination should be afforded less weight in these circumstances" because "even if the claims . . . are ultimately found to be non-core, such a finding" supports "a stay or transfer of the case to the District of Maryland." Dkt. 12 at 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

or advantage." *Id.* at 14.

Defendant contends that the Bankruptcy Court has "substantial knowledge and experience" with "material issues," having already "reviewed briefing and conducted a hearing" for a related action before transferring that action to the District of Maryland. Dkt. 12 at 12. Defendant also contends that the bankruptcy judge "is well-versed in the relevant facts, parties, issues, and law" and that the Bankruptcy Court "should retain this litigation if it is not transferred to Maryland." *Id.* at 13.[6] It argues that the Adversary Action is relatively new, but that the bankruptcy proceeding is not, and that as of the filing of the Opposition, "[t]he BP Fisher estate has been open for two years" with "over 874 filings." *See id.* at 12. Defendant adds that there are "three other pending adversary actions" to which Defendant and other common parties are attached, which likely have "overlap in issues and sequencing." Dkt. 12 at 12. Finally, Defendant argues that Plaintiff incorrectly contends that "state law insurance coverage claims 'are rarely heard in Bankruptcy Court.' " *Id.* at 12–13.

It will serve party and judicial efficiency to retain the reference. Plaintiff focuses on its claim that the Bankruptcy Court lacks familiarity with state law claims, and disregards its considerable familiarity with the facts and issues underlying the Adversary Action. *See In re Daewoo Motor America, Inc.*, 302 B.R. 308, 314 (C.D. Cal. 2003) ("[A]lthough this is not a core matter, a number of factors support not withdrawing the reference. First, the bankruptcy court is familiar with the issues in this case . . . ."); *cf. In re Ruby's Diner, Inc.*, No. 8:18-BK-13311-SC, 2021 WL 4572001, at *3 (C.D. Cal. June 2, 2021) ("[E]fficiency favors keeping the case with the bankruptcy court at this stage, because the bankruptcy court is familiar with the factual background and substantive law related to Plaintiff's core claims."). The Bankruptcy Court has received more than 1300 filings in the BP Fisher estate. *See In re BP Fisher,* No. 8:19-bk-10158-TA (Bankr. C.D. Cal.). In contrast, this would be the first time a related action would be heard by this Court. *See Weinstein v. Kuhl*, No. 18-CV-01351-HSG, 2018 WL 4904901, at *4 (N.D. Cal. Oct. 9, 2018) ("It is more efficient for the bankruptcy court—which is already familiar with the law and facts—to continue adjudicating the case, rather than this Court essentially starting from scratch.").

Further, the Bankruptcy Court is qualified to hear Plaintiff's state law-based insurance claims. *See id.* (declining to withdraw the reference for claims that included "Plaintiff's claim for declaratory judgment seek[ing] the Court's interpretation of [an] insurance policy"). A bankruptcy court can decide "non-core" state law claims and later enter its "proposed findings of fact and conclusions of law" for the district court to review *de novo. See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 37–39 (2014); *In re Heller Ehrman*, 464 B.R. at 356 (collecting cases).

Finally, the Bankruptcy Court is in the best position to decide the two currently pending motions to dismiss or transfer, given that it has previously heard similar motions. "The Court may 'consider that judicial efficiency is best served by allowing necessary pretrial issues, some of which may obviate the need for a jury trial altogether, to proceed in bankruptcy court.' " *Hjelmeset v. Cheng Hung*, No. 17-CV-05697-BLF, 2018 WL 558917, at *5 (N.D. Cal. Jan 25, 2018) (quoting *In re Gorilla Cos., LLC*, No. CV-09-1327-PHX-DGC, 2009 WL 3241759, at *4 (D. Ariz. Oct. 2, 2009)).

---

[6] In a later filing, (Dkt. 17), Defendant cited *Corcoran v. Peleus*, in which the District of Maryland denied a motion by Peleus to dismiss or, in the alternative, transfer to this District a related action seeking declaratory relief as to the insurance claims at issue in the same Adversary Action. The District Court of Maryland found that the transfer factors, as well as the first-to-file rule, weighed against transfer. *See Corcoran*, 2021 WL 3472664, at *6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

For all of these reasons, "[w]ithdrawal of reference at this stage would result in this court losing the benefit of the bankruptcy court's experience in both the law and facts, resulting in an inefficient allocation of judicial resources." *In re The Mortg. Store, Inc.*, 464 B.R. 421, 429 (D. Haw. 2011).

      c)      Delay and Costs to the Parties

As to this issue, Plaintiff makes only the conclusory statement that "the efficiencies to be gained by withdrawing the reference also include . . . avoiding unnecessary delay and costs." Dkt. 1 at 11–12; *see also* Dkt. 15. In response, and without citing any authority, Defendant argues that withdrawal of the reference will cause "delay and cost to the parties" because "it will create activity in a third court concerning the same or similar facts." Dkt. 12 at 13. Defendant also contends that such parallel proceedings will "increase[] the parties' expenses" and "the risk of delays caused by conflicting timelines or dueling pleadings in various jurisdictions." *Id.* Defendant further claims that retaining the withdrawal to the Bankruptcy Court is "likely to be the cheapest and quickest path to resolution" short of transferring the case to the District of Maryland. *Id.*

At the time Plaintiff filed the Motion, there were 44 matters docketed in the Adversary Action, including two motions to dismiss or transfer the proceedings. *See* Adv. Dkt. Hearing dates had been set for these motions. *Id.* Other docket items filed by parties in the Adversary Action included Requests for Summons, the Answer to the Adversary Complaint, the Counterclaim, the Answer to the Counterclaim, and various status reports, conferences and stipulations. *See id.* Withdrawing the reference would likely require Plaintiff, Defendant and other parties to refile motions like those already filed and/or pending before the Bankruptcy Court. Given Defendant's position that this action should ultimately be transferred to the District of Maryland, duplicative filings and further, resulting delays seem likely. Thus, this factor favors retaining the reference to the Bankruptcy Court. *Cf. Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 224 (D. Haw. 2006) (retaining the reference would "minimize delay and . . . cost" where the bankruptcy court had already held a scheduling conference and entered a scheduling order).

      d)      Prevention of Forum Shopping

"Evidence of forum shopping is a factor courts may consider in denying a motion to withdraw reference." *In re Mahlmann*, 149 B.R. at 870 (collecting cases). "Forum shopping occurs when a party attempts to manipulate an action to have it heard before a forum it deems more favorable, charitable, or sympathetic toward its point of view." *In re Cachet Fin. Servs.*, 652 B.R. 341, 348 (C.D. Cal. 2023) (internal quotations omitted) (quoting *Calvert v. Berg*, No. C13-1019, 2013 WL 3407790, at *5 (W.D. Wash. July 8, 2013)). "It is likely present when a party, perceiving that it may find itself forced into a disadvantageous forum, seeks to manipulate procedural devices to secure an advantage." *Id.* (internal quotations omitted) (quoting *In re: KSL Media, Inc.*, No. AP 15-01212-GM, 2016 WL 74385, at *9 (C.D. Cal. Jan. 6, 2016)). "The discretion to withdraw a reference to the bankruptcy court should be employed judiciously in order to prevent withdrawal from becoming just another litigation tactic for parties eager to find a way [into or] out of bankruptcy court." *Id.* at 350 (internal quotations omitted) (quoting *In re GTS 900 F, LLC*, No. 2:09-BK-35127-VZ, 2010 WL 4878839, at *5 (C.D. Cal Nov. 23, 2010)).

Plaintiff argues that "[i]n a non-core matter, forum shopping typically is [a] neutral [factor]." Dkt. 1 at 14. Plaintiff contends that withdrawing the reference would not encourage forum shopping because a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
|---|---|---|---|
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

"district court in any event would have to review *de novo* the bankruptcy court's findings of fact and conclusions of law." *Id.* (citing *Sec. Farms*, 124 F.3d at 1009). Plaintiff also contends that "neither denying nor granting" a motion to withdraw the reference "will facilitate forum shopping [] because a district court will ultimately need to address the issues, whether initially or on de novo review of the bankruptcy court." *Id.* at 14–15 (quoting *In re Tamalpais Bancorp*, 451 B.R. 6, 12 (N.D. Cal. 2011)).

Defendant responds that "Plaintiff is plainly forum shopping." Dkt. 12 at 11. Defendant claims that Plaintiff is a party to related actions pending in the District of Maryland that pre-date the Adversary Complaint, and that Plaintiff has moved to withdraw because it "fear[s] a similar [transfer]" of the Adversary Action to the District of Maryland. *Id.* at 11–12. In support of its contention, Defendant relies on *In re Mahlmann*, in which the court denied a motion to withdraw, because the plaintiffs there did not "move for withdrawal of the reference until after the bankruptcy judge set a briefing schedule on the [defendant's] motion to dismiss the plaintiffs' adversary action." *In re Mahlmann*, 149 B.R. at 870.

Plaintiff replies that this District is the only jurisdiction in which the Adversary Complaint could have been filed. Dkt. 15 at 3. Plaintiff argues that "[i]t is following 28 U.S.C. § 1409 by filing in the Bankruptcy Court in which the debtor's estate is being administered." *Id.* at 6. Plaintiff further argues that "whether *any party* is engaged in so-called 'forum shopping' is immaterial to the issues before the court on this [M]otion." *Id.* at 5. Plaintiff states that "[t]here will be a forum determination, whether by the District Court in Maryland or by a court in the Central District of California, but that decision needs to be made upon a complete record on an appropriate motion that has yet to be made in this District." *Id.*

The issue is not whether the filing of the Adversary Complaint was forum shopping. Instead, it is whether Plaintiff seeks to engage in forum shopping by filing its Motion to Withdraw the Reference. In determining whether forum shopping is at issue, courts may consider the timing of a motion to withdraw reference in light of the status of proceedings. *See In re Mahlmann*, 149 B.R. at 870; *Horowitz*, 2016 WL 5799011, at *5 ("Forum shopping is likely where a party moves to withdraw the reference after adverse findings have been made against it by the bankruptcy court.").

Although Plaintiff did not file the Motion until after the Bankruptcy Court set hearing dates for two motions to dismiss or transfer the Adversary Action, the Bankruptcy Court had not issued rulings on those motions. Therefore, there is no basis for the parties to address whether the Bankruptcy Court would appear to present a forum that is more or less "favorable" for Plaintiff. For these reasons, there is not a substantial showing as to the claimed forum shopping by filing the instant Motion. Accordingly, potential forum shopping does not weigh in favor of granting or denying the Motion.

e)   Uniformity of Bankruptcy Administration

Plaintiff argues that the adjudication of a non-core state law claim such as declaratory relief "does not trigger concerns about uniformity." Dkt. 1 at 14 (quoting *In re Joseph DelGreco & Co., Inc.*, No. 10 CV 6422 (NRB), 2011 WL 350281, at *5 (S.D.N.Y. Jan. 26, 2011)).

Defendant responds that "allowing one court to steer the same group of parties through factual discovery related to this adversarial proceeding will promote administrative uniformity." Dkt. 12 at 13–14 (quoting *In re Am. Capital Equip., LLC*, 325 B.R. 372, 378 (W.D. Pa. 2005)). Defendant states that moving the Adversary Action to this Court "would have a negative impact on the 'bankruptcy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

administration by needlessly disrupting the bankruptcy court's seamless processing of the case [and] effectively derail[] the bankruptcy process provided by statute' without sufficient offsetting benefits." *Id.* at 14 (quoting *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002)).

The issues in the Adversary Action "do[] not involve or implicate Bankruptcy law." *Diocese of Duluth v. Liberty Mut. Grp., Inc.*, No. 17-CV-549 (DWF/LIB), 2017 WL 9274925, at *10 (D. Minn. May 17, 2017). The Bankruptcy Court has issued no rulings in the Adversary Action. Further, other proceedings within the bankruptcy docket have continued despite the pendency of the Motion. *See In re B.P. Fisher Law Grp. LLP*, No. 8:19-bk-10158-TA (Bankr. C.D. Cal.). Although there could be benefits to allowing the Bankruptcy Court to "steer the same group of parties" through the proceeding (Dkt. 12 at 13–14), "the uniformity of Bankruptcy Administration . . . do[es] not weigh strongly either in favor of or against withdrawal of the Reference." *Diocese of Duluth*, 2017 WL 9274925, at *10; *cf. Horowitz v. Sulla*, No. AP 16-90015, 2016 WL 5799011, at *4 (D. Haw. Sept. 30, 2016) ("Granting Plaintiffs' Motion at this juncture, after several months of proceedings have already taken place—including several rulings on non-dispositive and dispositive motions in bankruptcy court—will have an adverse effect on judicial economy and the administration of justice.").

      f)  Plaintiff's Seventh Amendment Right to a Jury Trial in District Court

Finally, Plaintiff argues that, because Defendant's counterclaim "expressly requests compensatory damages," the Adversary Action "assumes legal attributes" and is eligible for a jury trial. Dkt. 1 at 12. Plaintiff argues that where an adversary proceeding concerns "non-core matters for which the right of a jury trial is available," it is "sufficient cause for discretionary withdrawal of the reference . . . ." *Id.* (citing *In re CIS Corp.*, 172 B.R. 748, 755 (S.D.N.Y. 1994)). Plaintiff also contends that "[b]ankruptcy courts cannot conduct jury trials in non-core matters because of the requirement for de novo review of the dispute by the District Court following trial in the bankruptcy court, which would violate the Seventh Amendment right to jury trial." Dkt. 15 at 5.

Defendant replies that Plaintiff "misapprehends the applicable law," and that "even in cases in which a bankruptcy court is not authorized to conduct a jury trial, district courts typically delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial . . . similar to how the District Court reviews reports and recommendations from Magistrate Judges." Dkt. 12 at 14–15 (internal quotations and citations omitted). Defendant argues that "jury trial demands do not override the fact that 'the bankruptcy court is in the best position to shepherd [this] action in the preliminary stages until such time that is determined that a trial is necessary.' " *Id.* at 15 (quoting *In re George T. Moran, Inc.*, No. 10-00296-RAG, 2012 WL 782533, at *2 (D. Md. Mar. 8, 2012)).

"In this Circuit, bankruptcy courts are not divested of pre-trial jurisdiction over matters which they ultimately may be unable to decide." *In re Cedar Funding, Inc.*, 419 B.R. 807, 819 (B.A.P. 9th Cir. 2009) (citing *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007)). "[R]equiring that an action be immediately transferred to district court simply because of a jury trial right would run counter to our bankruptcy system." *In re Healthcentral.com*, 504 F.3d at 787 (emphasis omitted). Although bankruptcy courts cannot conduct jury trials in non-core matters, this does not prevent them from handling pre-trial matters in a manner akin to the work of magistrate judges. *See Hawaiian Airlines*, 355 B.R. at 224 (collecting cases). "Even where the presence of non-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV20-01842 JAK | Date | September 6, 2024 |
|---|---|---|---|
| Title | Peleus Insurance Company v. B.P. Fisher Law Group, LLP, et al. | | |

core claims and a jury demand indicate that the reference to the bankruptcy court ultimately may have to be withdrawn, a district court may exercise its discretion not to withdraw the reference immediately where, for example, the bankruptcy court is already familiar with the relevant facts and issues and the issues triable by a jury are not yet ripe for trial." *Id.*

For these reasons, Plaintiff's "jury trial demand does not weigh in favor of withdrawal of the reference at this time." *Id.*

**IV.     Conclusion**

For all of the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    tj